IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SMITA PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 3456 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| LOUIS DEJOY, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Smita Patel, is a United States Postal Service ("USPS") employee who alleges that from November 2014 through July 2017, "on and off," (ECF No. 1, Compl. at 2), the USPS discriminated against her based on her age, color, disability, national origin, race, religion, and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act, and that it retaliated against her for asserting rights protected under those laws. The USPS moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, the Court grants the motion.

**LOCAL RULE 56.1**

Before setting out the facts of this case, the Court will discuss plaintiff's failure, in large part, to comply with this district's Local Rule 56.1. While plaintiff's pleadings are construed liberally because she is proceeding pro se, the Court is nonetheless entitled to expect strict compliance with the Local Rules at the summary-judgment stage. *See Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017). Plaintiff was provided with the Local Rule 56.2 notice to unrepresented litigants, which explains the summary-judgment process and the requirements of the Local Rules, but she did not follow those requirements. And as defendant notes in reply, plaintiff is no stranger to the summary-judgment process, having been advised by another federal court in an earlier employment-discrimination action of what the Local Rules require at this juncture. *See Patel v. Brennan*, No. 20 C 2238, 2021 WL 5937769, at *1-4 (N.D. Ill. Dec. 16, 2021) (Seeger, J.). Plaintiff's submissions suffer from many of the deficiencies identified by Judge Seeger in the previous case.

Local Rule 56.1 instructs nonmoving parties to file a single response to a movant's statement of material facts. Plaintiff, however, filed not one but two responses to defendant's fact statement. One of plaintiff's Local Rule 56.1 responses is incorporated in her responsive memorandum. (ECF No. 55-1, Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt.) Plaintiff's other Local Rule 56.1 response is a self-contained document. (ECF No. 55-3, Pl.'s Resp. Def.'s LR 56.1 Stmt.) The Court has exercised its discretion to consider both responses despite plaintiff's

noncompliance, though the Court has disregarded a purported factual dispute asserted in one response where the same fact is admitted in the other response. (*Compare* Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. ¶¶ 25-26 (admissions) *with* Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶¶ 25-26 (conclusory and unsupported objections).)

Plaintiff failed to support most of her asserted factual disputes with citations to evidence. (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. ¶¶ 3-6, 8-10, 13-14, 19, 23-24; Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶¶ 3-6, 13, 21, 24-26.) In the vast majority of instances when plaintiff disputed a fact statement and cited evidence, she merely added unresponsive argument or facts or cited evidence that does not support a dispute. (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. ¶¶ 1, 2, 7, 12, 16; Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶¶ 2, 7, 9-12, 14-26.) The following is one example:

> Defendant's Statement:
> Patel applied for but was not selected for temporary assignments (details) to the position of manager of distribution operations on June 20, 2017, and July 2, 2017. Ex. 3 at 91, 92; Ex. 9 at 139. She stated that [Quintin] Mayberry selected Darnell Rhynes for a detail because he got along with people, but she does not know if he was selected for the details available on these two dates. Ex. 3 at 93-94, 95; Ex. 11 at 250-51.
>
> Plaintiff's Response:
> Objection. Darnell Rhynes got detail. Mr. Mayberry's answer is an objection here, he is not following the job description which is same for the detail requirements. He was making his own rules and not following the USPS policy. EXHIBIT C page 00344 thru 00359 MDO 20, 22 job description. He was doing same job as regular MDO like Ms. [Theresa] Caminata.

(ECF No. 52, Def.'s LR 56.1 Stmt. ¶ 12; Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. ¶ 12.) This denial, as well as plaintiff's citation of the job description, is unresponsive and improperly argumentative. Plaintiff's other response to this fact statement is even lengthier and similarly deficient. (Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶ 12.) Another example is plaintiff's assertion in response to a statement about a situation in June 2016 when plaintiff asked Caminata (one of her supervisors) to reassign another employee, Howard Childress, to her unit because she was short a driver. Plaintiff responded by supplying narratives containing additional unresponsive facts, such as "I have a right to move anyone where it is needed within my unit according to their bids," "There is a schedule for driver[s] to drive in which units," and " Ms. Caminata was yelling at the Plaintiff." (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. ¶ 7; Pl.'s Resp. Def.'s LR 56.1 Stmt. ¶ 7.) Plaintiff cited a written statement Childress evidently made at work or in the context of a proceeding before

the USPS's Equal Employment Opportunity ("EEO") office[1] in which Childress briefly refers (without further description) to a "big argument" at the time between plaintiff and Caminata "about [Childress] driving" a forklift. (ECF No. 55-4 at ECF Page 14.) But Childress did not mention anyone "yelling," and in any event plaintiff's denials are unresponsive to the substance of defendant's statement.

Plaintiff's approach—purporting to dispute statements in whole or in part and proceeding only to add argument and fact that does not address the substance of a given statement—is an impermissible tactic on summary judgment. *See* N.D. Ill. LR 56.1(e)(2) ("A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made. A response may not assert legal arguments except to make an objection . . . ."). "Using [additional facts] to directly dispute the Defendant's facts is fine, but to be considered as facts affirmatively demonstrating why summary judgment should be denied, the Plaintiff's evidence must also appear in [her] statement of additional facts under the local rules. Putting this evidence in the statement of additional facts is necessary because the Defendant has no mechanism to 'reply' to the Plaintiff's responses to the Defendant's facts and thereby dispute the contentions raised in the Plaintiff's responses." *Anderson v. Iacullo*, 963 F. Supp. 2d 818, 822 (N.D. Ill. 2013) (some internal punctuation and citation omitted). Because plaintiff's denials do not comply with Local Rule 56.1, the Court deems plaintiff to have admitted defendant's properly supported fact statements. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the local rule, those facts are deemed admitted for purposes of the motion); *Dapkus v. Chipotle Mexican Grill, Inc.*, No. 15 C 6395, 2017 WL 36448, at *1 n.1 (N.D. Ill. Jan. 4, 2017) ("The requirements for responses are not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted.") (internal quotation marks and citation omitted). The Court also has disregarded plaintiff's purely argumentative responses and the additional assertions in plaintiff's responses to defendant's Local Rule 56.1 statement that are not directly responsive to defendant's properly supported statements of fact.

Furthermore, plaintiff's statement of additional material facts is stricken in full for failure to comply with Local Rule 56.1(d). The statement consists of argument, not facts (for instance,

---

[1] Plaintiff submitted numerous exhibits, most of which appear to be emails among plaintiff and her supervisors pertaining to various complaints by plaintiff or documents that relate to or were generated as a part of the proceedings on plaintiff's complaints before the USPS's EEO office. The exhibits are not organized in any meaningful way, and many are only portions of documents. Plaintiff cites this evidence infrequently; where she does provide citations, they are often confusing or the cited material fails to support a dispute. "[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (citation and internal punctuation omitted). Even with a pro se litigant, "the court is not required to sift through an immense record to 'tease out' support for arguments." *Alexander K. v. Kijakazi*, No. 20 C 5819, 2021 WL 4169570, at *10 (N.D. Ill. Sept. 14, 2021); *see also Moore v. State Farm Mut. Auto. Ins. Co.*, 775 F. App'x 251, 252 (7th Cir. 2019) (courts cannot fill a void by conducting research and crafting arguments for a party).

"USPS managers are not telling the truth under oath and must go for the lie detector test" and "defendant's managers are not honest"). (ECF No. 55-2, Pl.'s Stmt. Add'l Facts at 1.) The statement also lacks citations to evidentiary material.

## FACTS

Plaintiff refers to herself as "an Asian/Indian, and American citizen, Hindu, brown, female." (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 2.) She is over 50 years old and has knee injuries, knee replacement, and plantar fasciitis. Plaintiff began working for the USPS in 1995 and now works at the USPS Processing and Distribution Center in Palatine, Illinois as a supervisor of distribution operations ("SDO") on tour one, a shift that begins in the evening. At the relevant time, plaintiff managed work assignments for her team of clerks and mail handlers, ensured timely processing of mail, and handled timekeeping and grievances. She oversaw the parcel-post unit and the low-cost unit, and she was able to perform all her duties. Plaintiff reported to Theresa Caminata, an acting manager of distribution operations ("MDO"). Caminata reported to a senior MDO, Judy Green, who reported to the plant manager, Quintin Mayberry.

Plaintiff's complaint encompasses several discrete sets of facts, one of which stems from plaintiff's assertions that on unspecified dates, Caminata followed her around at work (plaintiff characterizes it as "stalking") and talked about her behind her back, including telling another employee that Caminata intended to fire plaintiff. It is undisputed that as an acting MDO, Caminata had to walk around both floors of the USPS facility to oversee all operations and supervise her subordinates. Mayberry investigated plaintiff's claims and determined that they were unsubstantiated.

In March 2015, plaintiff put her head down on her desk.[2] Plaintiff says that a coworker took a photo of her with her head down and a coworker named Sharita May then showed the photo to a manager, Irving Mathis. Mathis asked plaintiff if she was all right. Upset that her photo had been taken, plaintiff spoke to Mayberry about the incident. Mayberry did not find out who had taken the photo.

Plaintiff supervised six to eight clerks, two drivers, and two "dumpers," who dump mail into chutes. If she was short-staffed to accomplish her duties, she consulted her manager and requested additional staff. Plaintiff regularly complained to Caminata about staffing numbers, and Caminata explained that staffing is directed where it is needed. On June 15, 2016, plaintiff found herself short one driver in the parcel-post unit. She asked Caminata for a driver and suggested that Childress be reassigned to parcel post from the low-cost unit. Caminata agreed, Childress worked for two hours on that temporary duty, and plaintiff was able to get the mail out. Plaintiff does not know whether other units were short on drivers.

In June and July 2017, plaintiff applied but was not selected for temporary assignments ("details") to an MDO position. An employee named Darnell Rhynes was selected for one of these details. Similarly, on an unknown date, plaintiff applied for a detail to the safety office at her

---

[2] At her deposition, plaintiff testified that she had been feeling dizzy during a break, so she put her head down. (ECF No. 54-1, Dep. of Smita Patel at 167.)

4

facility, but she was not selected. Mayberry selected an employee named Jacqueline Franklin for the detail. Mayberry stated in an EEO affidavit that he did not select plaintiff for the details because she did not have the required knowledge, did not get along with others, and did not treat others with respect. (ECF No. 54-3, Aff. of Quintin Mayberry at 249-50, 252-53.)

In August 2015, February 2017, and May 2017, plaintiff applied for the MDO position at the USPS Palatine facility, but she was not selected. Plaintiff believes that an employee named Donald Bell was chosen for one of the positions. In November 2014, November 2015, and January 2016, plaintiff applied for manager positions at the USPS Carol Stream facility. Plaintiff was not selected for these positions, and she does not know who was selected for them.

In 2015, plaintiff temporarily changed shifts. Due to an error, plaintiff was paid for two shifts on each workday over the course of two pay periods, when she had only worked a single shift on a given day, resulting in an overpayment. She did not notice the overpayment, but the USPS discovered the error in March 2016. Plaintiff did not agree to repay the USPS, so the USPS proceeded to debt collection to recover the overpaid wages. In 2017, plaintiff was out of work, on workers' compensation for an injury. For three pay periods, she was erroneously paid both her regular salary and workers' compensation benefits. The USPS later discovered this error and collected the overpayment from plaintiff.

Plaintiff filed over twenty complaints about her workplace with the EEO office, in the years 2002, 2003, 2004, 2005, 2006, 2008, 2009, 2010, 2011, 2012, 2014, 2015, 2016, and 2017. At issue in this action is the conduct about which plaintiff complained in EEO filings dated September 22, 2016, July 27, 2017, September 15, 2017, and October 3, 2017. The EEO office combined those complaints and accepted seven issues for consideration.[3] Those seven issues—claims of discrimination and retaliation—form the basis of plaintiff's complaint in the instant case and are discussed below.[4]

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if the evidence is such that a reasonable jury could

---

[3] Beyond this fact, the parties do not provide any details about the EEO proceedings. According to the complaint, plaintiff received a final agency decision on March 22, 2021.

[4] In her form complaint, plaintiff also checked the boxes alleging that defendant failed to reasonably accommodate her religion and disabilities, and she added an allegation that she was defamed. Plaintiff appears to have abandoned those claims; she agrees with defendant that this case is based on the seven issues accepted for investigation with respect to her 2016 and 2017 EEO complaints. Those issues do not include defamation or failure to accommodate. In any event, plaintiff forfeits the claims because she fails to develop them in her summary-judgment brief. *See Johnson v. Saville*, 575 F.3d 656, 663 (7th Cir. 2009).

return a verdict for the nonmoving party." *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019). The Court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmovant—here, plaintiff. *See Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014). The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Jackson v. Ill. Dep't of Com. & Econ. Opportunity*, No. 21-1168, 2022 WL 3009598, at *3 (7th Cir. July 29, 2022).

As the movant, defendant has the initial burden of informing the court why a trial is not necessary. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmovant's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (internal quotation marks and citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but she must go beyond the pleadings to demonstrate that there is evidence upon which a jury could reasonably find in her favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

"Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing 42 U.S.C. § 2000e-2(a)). The ADEA "further prohibits discrimination against workers aged 40 years or older." *Id.* (citing 29 U.S.C. § 623(a)(1)). "To succeed on a Title VII discrimination claim, an employee must prove (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Id.* (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)). The Court of Appeals recently described the framework for analyzing a Title VII claim as follows:

> Title VII prohibits an employer from discriminating against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. In discrimination cases, when a defendant moves for summary judgment, the singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the . . . adverse employment action. Whether a plaintiff offers direct or circumstantial evidence of discrimination, this court made clear in *Ortiz v. Werner Enters., Inc.*, that "all evidence belongs in a single pile and must be evaluated as a whole." 834 F.3d 760, 766 (7th Cir. 2016).

> One way of proving employment discrimination under Title VII remains the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The familiar *McDonnell Douglas* approach requires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext. . . . But a plaintiff need not use the *McDonnell Douglas*

6

> framework after *Ortiz*. At summary judgment, what matters is whether a plaintiff presented enough evidence to allow the jury to find in [her] favor.

*Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957-58 (7th Cir. 2021) (some internal punctuation and citations omitted). "The *McDonnell Douglas* burden-shifting framework requires plaintiff [to] show: (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718-19 (7th Cir. 2021) (citation and internal punctuation omitted).

"The legal analysis for discrimination claims under Title VII and § 1981 is largely identical." *Lewis*, 36 F.4th at 759 (citing *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019)). Discrimination claims under Title VII simply require that race, color, religion, sex, or national origin be a "motivating factor" in the defendant's challenged employment decision. *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020)). For a § 1981 race-discrimination claim, however, "a plaintiff bears the burden of showing that race was a but-for cause of her injury." *Id.* (internal punctuation omitted) (citing *Comcast*, 140 S. Ct. at 1014). "Similarly, age discrimination claims require a private-sector employee to prove that age was the but-for cause of the adverse employment action." *Id.* (citing *Tyburski v. City of Chi.*, 964 F.3d 590, 598 (7th Cir. 2020)).

To prove a claim of disability discrimination under the Rehabilitation Act, a plaintiff must show that (1) she is disabled, (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) she suffered an adverse job action solely by reason of her disability. *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022) (citing 29 U.S.C. § 794(a) and *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016)). "The 'solely by reason of' causation standard is stricter than the causation standard in Title I of the ADA, which the Rehabilitation Act otherwise incorporates for its liability standards." *Id.* (citing, *inter alia*, 29 U.S.C. § 794(d)).

The statutes under which plaintiff brings suit also prohibit employers from retaliating against employees who exercise their rights under those statutes. *Lewis*, 36 F.4th at 761 (Title VII, ADEA); *Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 710 (7th Cir. 2015) (ADA); *Noll v. Bd. of Regents of Univ. of Wis. Sys.*, No. 21-3176, 2022 WL 2113081, at *1 (7th Cir. June 13, 2022) (Rehabilitation Act); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (§ 1981). To survive summary judgment on a retaliation claim, a plaintiff must offer sufficient evidence for a reasonable jury to conclude that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Lewis*, 36 F.4th at 761; *Silk*, 795 F.3d at 710; *Anderson v. Donahoe,* 699 F.3d 989, 995 (7th Cir. 2012); *O'Leary*, 657 F.3d at 630.

**A.    Adverse Employment Actions**

The salient inquiry—whether the evidence would permit a reasonable factfinder to conclude that a proscribed factor caused a materially adverse employment action—presupposes

the existence of such an action. *Madlock v. WEC Energy Grp., Inc.,* 885 F.3d 465, 470 (7th Cir. 2018). The threshold issue, therefore, is whether such an adverse action has even occurred. *Id.*

Plaintiff claims that she suffered the following seven adverse employment actions on account of her age, color, disability, national origin, race, religion, and sex: (1) on June 25, 2016, Caminata yelled at plaintiff in front of employees and did not provide her with adequate staff; (2) managers followed and "stalked" plaintiff, talked about her behind her back, and "leaked" information about her; (3) in June and July 2017, plaintiff was denied higher-level detail opportunities; (4) plaintiff was denied a detail to the Safety Office; (5) plaintiff was not selected for promotions; (6) plaintiff was intentionally overpaid in order to cause the USPS to pursue the debt for collection; and (7) plaintiff's photograph was taken and disseminated at work.

Defendant argues that as a matter of law, the first, fourth, sixth, and seventh of these employment actions cannot be considered materially adverse. The Court agrees. A plaintiff must show that she suffered a *materially* adverse employment action, not just a minor or trivial one. *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 729 (7th Cir. 2020); *Manning v. Potter*, 250 F. App'x 743, 746 (7th Cir. 2007); *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 649 (7th Cir. 2011); *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). "For a discrimination claim, a materially adverse action is one that diminishes an employee's compensation or benefits, constitutes a nominally lateral transfer but nonetheless reduces an employee's career prospects, or subjects an employee to altered working conditions that are degrading and humiliating. We have emphasized that such actions are more disruptive than a mere inconvenience or an alteration of job responsibilities." *Whigum v. Keller Crescent Co.*, 260 F. App'x 910, 913 (7th Cir. 2008) (citation and internal punctuation omitted); *see also Kurtzhals*, 969 F.3d at 729 ("[N]ot everything that makes an employee unhappy is an actionable adverse action."); *Madlock*, 885 F.3d at 470 (materially adverse actions include those that involve the plaintiff's current wealth or career prospects, or changes to work conditions that include "humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace"). "To support a retaliation claim, however, qualifying adverse acts extend beyond those that affect the terms and conditions of employment. A materially adverse employment action in the realm of a retaliation claim is one that would dissuade a reasonable employee from making or supporting a claim of discrimination." *Whigum*, 260 F. App'x at 913.

Regarding the staffing dispute with Caminata in June 2016, plaintiff testified at her deposition that while Caminata allowed Childress to supplement plaintiff's staff for two hours, she then required Childress to "go back to his unit." (ECF No. 54-1, Dep. of Smita Patel at 32.) Plaintiff got upset and disagreed with Caminata, and plaintiff says that Caminata "yelled at" her in front of coworkers when plaintiff questioned the staffing decision. (*Id.* at 32, 39.) But there is no evidence that plaintiff suffered any tangible job consequence as a result of having been short staffed or yelled at. Being "yelled at" by a supervisor (even in front of coworkers) and inconvenienced by temporary short staffing are not harms that rise to the level of being materially adverse. *See Fabiyi v. McDonald's Corp.*, 595 F. App'x 621, 623 (7th Cir. 2014) (supervisors' having yelled at and reprimanded plaintiff, sometimes in front of her coworkers, was insufficiently adverse to sustain a claim of discrimination or retaliation); *Threatt v. Donovan*, 380 F. App'x 544 (7th Cir. 2010) ("alleged indignities" like being criticized or reprimanded in front of coworkers are not materially adverse); *Halloway v. Milwaukee Cnty.*, 180 F.3d 820, 826 (7th Cir. 1999)

(short-term failure to provide plaintiff with the offices, staff, and equipment he felt he deserved was not an actionable adverse action); *Watson v. Potter*, 23 F. App'x 560, 563 (7th Cir. 2001).

Plaintiff's non-selection for the Safety Office detail also was not materially adverse. At her deposition, plaintiff did not dispute that it was a temporary, lateral position, and there is no evidence that it involved an increase in compensation. Plaintiff further stated that the reason she sought the detail was that it involved "less walking." (Patel Dep. at 110.) But there is no evidence that the Safety Office detail would have resulted in any tangible benefit to plaintiff, and her purely subjective preference for a temporary assignment that involved less walking is not sufficient to show an adverse employment action. *See Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 834 F.3d 760; *Madlock*, 885 F.3d at 471. Plaintiff now asserts in her response brief that the denial of the Safety Office detail harmed her "opportunity for future progress and higher level promotion," (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 21, 25), but she does not develop the argument or point to any evidence that supports that conclusory assertion.

Next, no reasonable factfinder could determine that the erroneous salary overpayments in 2015 and 2017 rise to the level of adverse employment actions. Plaintiff does not make any coherent argument to the contrary, and she does not identify any harm that resulted.[5] She testified that she did not notice the overpayments until they were brought to her attention, and she concedes that she was not entitled to these additional funds. While adverse employment actions extend beyond readily quantifiable losses, not every unpleasant work situation or inconvenience is actionable. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007).

Similarly, the incident involving a coworker having photographed plaintiff with her head on a desk cannot be characterized as a materially adverse action. Plaintiff testified that one of her coworkers showed the photo to a manager and that the only result was that the manager showed concern and checked on plaintiff to make sure she was okay. There is no evidence that plaintiff was disciplined or that any other consequence occurred. The harm, if any, was trivial. Plaintiff argues that there was "no need" for her coworker to take her photo without her permission, (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 26), but again, not everything that makes an employee unhappy is an adverse employment action. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (federal law does not set forth a "general civility code for the American workplace," so it does not protect employees from "petty slights or minor annoyances that often take place at work and that all employees experience"); *Stephens*, 569 F.3d at 790.

**B.     Discrimination**

Because no reasonable factfinder could determine that the first, fourth, sixth, and seventh actions at issue were materially adverse, the Court need not discuss them with regard to plaintiff's

---

[5] Plaintiff does attempt to tie the overpayments to the fact that she was denied promotions, but there is no evidentiary support for this confusing argument. Plaintiff also claims that Mayberry caused the overpayments purposely, but she points to no evidence that would suggest the overpayments were deliberately caused by anyone, let alone Mayberry.

discrimination claims. The remaining employment actions at issue are the second, third, and fifth: plaintiff's alleged treatment by managers; the denial of higher-level detail assignments; and the denial of promotions. Defendant argues that plaintiff cannot establish a prima facie case of discrimination on these claims and that even if she could do so, she cannot establish that the USPS's legitimate, non-discriminatory reasons for its actions are pretextual. In response to defendant's motion, plaintiff appears to assert that her claims should survive summary judgment regardless of whether they are analyzed under the *McDonnell Douglas* burden-shifting framework or any other path to proof.

As to the *McDonnell Douglas* approach, defendant contends that plaintiff cannot demonstrate that there were similarly situated employees outside her protected class who received better treatment. The Court agrees. "Similarly situated" means directly comparable in all material respects, but not identical in every conceivable way. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018). Courts must conduct a common-sense examination and ask essentially whether there are enough common features between individuals to allow a meaningful comparison. *Id.* At her deposition, plaintiff testified that Caminata was the manager who discriminated against her at an unspecified time by following and "stalking" her, talking about her behind her back, and "leaking" information about her. Plaintiff did not recall the dates when this conduct allegedly occurred (stating, "I forget things, . . . to be honest") but generally described Caminata having "followed" her around the facility and having told other employees that plaintiff was transferring to another facility and that she was planning to "fire" plaintiff. (Patel Dep. at 72-73, 77, 79-81.) As possible comparators, plaintiff suggests three other SDOs: Bonnie Knowles, Leonard Lampton, and Shaun Withers, as well as "more tour-1 supervisors." (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 28.) Plaintiff argues that these coworkers are all "directly comparable in all material aspects," (*id.* at 27), but does not develop this argument beyond conclusory assertions, and she concedes that she does not know their characteristics other than that they are "not Hindus, not from India," (*id.* at 28). Plaintiff fails to point to evidence that would allow a determination of these individuals' suitability as comparators or that supports her general assertion that they were "treated better than the plaintiff." (*Id.*) Absent a valid comparator, plaintiff cannot move past summary judgment on this claim under the *McDonnell Douglas* approach. *See Phillipson v. Wolf*, 831 F. App'x 212, 217 (7th Cir. 2020); *Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 590 (7th Cir. 2011).

On her claims that she was denied higher-level details and promotions, plaintiff also fails to set out similarly situated coworkers who were treated differently. "To demonstrate a prima facie case for failure to promote, a plaintiff must produce evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016). "Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a prima facie case for failure to promote." *Id.* In response to defendant's argument that at her deposition plaintiff identified only one comparator (Darnell Rhynes) for the two instances in 2017 in which she was denied a higher-level detail, plaintiff appears to contend that Knowles, Franklin, and Caminata could be additional proper comparators for this claim. But plaintiff provides no evidence regarding who was selected or their comparable qualifications, and she fails to develop any argument regarding either detail beyond identifying Rhynes, Knowles,

10

and Caminata's job titles. Plaintiff similarly fails to identify a possible comparator for the manager positions for which she was not selected (at the Palatine and Carol Stream facilities). At her deposition, plaintiff "assume[d]" that Donald Bell was selected for one of the Palatine positions, (Patel Dep. at 128-30), and continues to so "assum[e]" in her response brief, (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 9), but she fails to develop any argument about his comparative qualifications.

In general, plaintiff's brief contains vague, scattered references to various coworkers who plaintiff contends only in the most conclusory fashion are possible comparators. She maintains that she does not "have any personal information to know anyone's information" and that she is "not [the] HR department." (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 13.) But plaintiff could have obtained such information in discovery. Her contentions that she "was not selected [and] that is discrimination to [her]," (*id.* at 30), and that Mayberry's "act is a proof of his discrimination," (*id.* at 36), do not suffice.

The ultimate question is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's age, color, disability, national origin, race, religion, or sex caused the adverse employment actions. *Reives v. Ill. State Police*, 29 F.4th 887, 892 (7th Cir. 2022). Under any applicable causation standard, the answer is no. Plaintiff does not proffer evidence of an admission or something akin to an admission of discrimination or retaliation by the USPS.[6] Nor has she pointed to *any* circumstantial evidence that would allow a trier of fact to infer unlawful discrimination.[7] Plaintiff refers vaguely to persons who have "knowledge of [her] situation" or were "eye witness[es]" to various events. (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 19, 21, 36.) But she fails to introduce any evidence from or about these individuals that would permit a jury to reasonably determine that she was a victim of prohibited discrimination.

Plaintiff attributes her failure to offer such evidence to speculation that her coworkers "are afraid to speak the truth," and she argues that her managers are "liars" and that they should "[have] to go for [a] lie detector test." (*Id.* at 1, 16, 20, 22, 29, 42.) She also concedes that Mayberry and Caminata's "discrimination can be proven in the trial [and] that is the best evidence plaintiff has"

---

[6] Plaintiff acknowledges as much, commenting that a "[k]iller is not going to admit that he/she did murder." (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 36.)

[7] Even if plaintiff had established a prima facie case of discrimination with respect to her claims that she was denied higher-level details, she fails to present evidence suggesting that the non-discriminatory reasons defendant offers are pretextual. Pretext is not just "faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389-90 (7th Cir. 2020) (brackets omitted). Defendant relies on Mayberry's EEO Investigative Affidavit, in which he stated that plaintiff did not meet the qualifications for the details because she did not have knowledge of "the operations portion" of the details, did not "get along with others," and did not "treat others with dignity and respect." (ECF No. 54-3, Aff. of Quintin Mayberry, at ECF Page Nos. 28-29.) There is no evidence from which a reasonable jury could infer that this explanation is unworthy of credence.

11

and repeatedly asserts that "[her] evidence is a court trial," a trial "is the only way plaintiff can prove her case," and "granting the trial is [her] most evidence." (*Id.* at 20, 22, 33, 40.) When challenges to credibility, however, "are all that a plaintiff relies on, and [s]he has shown no independent facts—no proof—to support [her] claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (brackets and emphasis omitted); *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) ("At summary judgment . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it [is] not the district court's job to sift through the record and make [a party's] case for [her]."); *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact."); *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").

Plaintiff's assertion that she will prove defendant's unlawful discrimination *at trial* runs afoul of the standard on summary judgment. "[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence [she] has that would convince a trier of fact to accept [her] version of events." *Springer*, 518 F.3d at 484 (internal punctuation and citation omitted). There is no evidence on this record that the actions of which plaintiff complains were motivated by unlawful discrimination.

**C.    Retaliation**

Plaintiff's claims of retaliation suffer from the same evidentiary shortcomings.[8] She appears to contend, generally, that each adverse action at issue was in retaliation for her EEO complaints. Defendant argues that without evidence of particular dates on which many of the adverse actions occurred, it is impossible for plaintiff to establish even a temporal connection with her prior protected activities. As to the adverse actions that do have specific dates, such as the denial of higher-level detail assignments, defendant argues that they are too attenuated in time from plaintiff's prior complaints for a reasonable jury to conclude without more that there was a causal connection.

In response to defendant's motion, plaintiff refers to her retaliation claims only in passing. For instance, she argues that "Mr. Mayberry already made up his mind to retaliate and did not want [plaintiff] to go further in [] life." (Pl.'s Resp. Def.'s Mem. & LR 56.1 Stmt. at 41.) Plaintiff also vaguely contends that defendant "did not provide plaintiff's emails conversation," which she "need[s]" to prove retaliation. (*Id.* at 14.) The Court is unpersuaded; plaintiff fails to explain why the emails are significant or what they would show. Timing alone is generally insufficient to establish a retaliatory motive; for timing to suffice, a retaliatory action must follow on the close heels of the protected activity, generally no more than a few days. *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022); *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019). Not only

---

[8]    This conclusion follows even if all seven of the employment actions at issue are considered for purposes of analyzing plaintiff's retaliation claims. *See generally Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017) (employment actions that were not in and of themselves materially adverse may still be evidence of retaliatory motive for actionable actions).

does plaintiff fail to confront the timing issues defendant raises, but she also fails to address the elements necessary to establish a claim of retaliation, cite authority, discuss the evidence, or present any argument as to how the elements of retaliation are satisfied here. Plaintiff points to no evidence in the record that would permit a reasonable jury to infer that defendant engaged in retaliation.

In light of these conclusions, the Court need not reach defendant's argument that certain of plaintiff's claims are time-barred.

## CONCLUSION

Defendant's motion for summary judgment [50] is granted. Final judgment will be entered in favor of defendant and against plaintiff. Civil case terminated.

**DATE:** October 3, 2022

*/s/ Ronald A. Guzmán*

**Hon. Ronald A. Guzmán**
**United States District Judge**